# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JEFFREY BLAINE DOLPHAY,<br><br>Defendant. | **CR 20-64-GF-BMM**<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |

The government charges Jeffrey Blaine Dolphay ("Defendant Dolphay") with conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846(1), and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Doc. 1. Defendant Dolphay filed a Motion to Suppress. Doc. 15. He challenges the validity of the Phillips County search warrant authorizing officers to search Wayne Dolphay's property for a stolen ATV. Doc. 16 at 21. He also challenges the validity three subsequent Hill County search warrants because they stem entirely from the Phillips County search warrant. *Id*. The Court held a hearing on March 24, 2020. Doc. 25.

1

**BACKGROUND.**

**The Initial Search.**

In January 2012, the Phillips County Sheriff's Office ("the PCSO") learned that someone had stolen Jason Morrison's all-terrain vehicle ("ATV"). Doc. 16-2 at 2. Morrison provided the ATV's color, make, model, and VIN number. *Id*. He also provided serial numbers to various components, including the ATV's engine and frame.

In June 2016, Glenn Dolphay reported the theft of some personal property to the PCSO. *Id*. While talking to officers, Glenn claimed that his brother, Wayne Dolphay, had Morrison's stolen ATV. *Id*. Glenn also claimed that Wayne possessed other stolen property, including a tilt-bed trailer and some heavy equipment. *Id*. at 3. Glenn recalled that the State of Montana stock inspector recently had located a stolen cattle chute from Wayne's property. *Id*. Glenn told the PCSO in a follow-up conversation that Wayne had repurposed the pump and motor from the stolen cattle chute to use in a wood splitter. *Id*. The State of Montana stock inspector later confirmed that they had located a stolen cattle chute with a missing motor on Wayne's property in 2016. *Id*.

Phillips County Sherriff's Deputy Jerry Lytle ("Deputy Lytle") applied for a search warrant from the Phillips County District Court to search Wayne's property for Morrison's stolen ATV. Doc. 16-2 at 2. Deputy Lytle identified the legal

descriptions of the four adjoining parcels that constitute Wayne's property. *Id.* at 2–3. Deputy Lytle included in the search warrant application Glenn's statements, the State of Montana stock inspector's corroboration, and details of the 2012 theft of Morrison's ATV. *Id.* Deputy Lytle included in the search warrant application a google maps imagine depicting Wayne's property. *Id.* at 6.

The google maps image depicts a single, rural property formed by four contiguous parcels roughly in the shape of a right triangle with the hypotenuse on the western border. *Id.* Wilderness Road borders the rural property on the west. Willow Creek Dr. borders the property on the east. *Id.* A fence marks the northern boundary of the property. Another county road, Rd. 30 N., bisects the property west to east. *Id.* Roughly two-thirds of the property remains open for the cultivation of crops and pastureland. *Id.* A swampy area just north of Rd. 30 N. makes that portion of the property unusable. *Id.*

The shops and outbuildings sit in a cluster in the center of the property just to the south of Rd. 30 N. *Id.* Wayne Dolphay's house, which the officers did not search, sits roughly one mile to the northwest of the shops and outbuildings at the end of a lengthy driveway. *Id.* District Judge John McKeon signed the search warrant on July 13, 2016. Doc. 16-1 at 1–2.

The PCSO requested assistance from the Hill County Sheriff's Office ("the HCSO") and executed the Phillips County search warrant on July 14, 2016.

Doc. 16-4 at 4. Officers located several ATVs near the shop on Wayne's property, including Morrison's ATV. Doc. 16-3 at 1. Morrison's ATV lacked a few parts, including the rear fenders. Doc. 25. Officers checked the VIN numbers of the other ATVs. One VIN number matched an ATV reported stolen in Hill County, Montana. Doc. 16-4 at 4.

Officers found a partially disassembled ATV while searching for Morrison's missing fenders inside the shop on Wayne's property. *Id*. The VIN number on the disassembled ATV matched an ATV reported stolen in Kootenai County, Idaho. *Id*. The Kootenai County police report listed a variety of tools that had been stolen with the ATV. *Id*. Officers saw tools scattered around the shop on Wayne's property that matched the description of the tools stolen reported from Kootenai County, Idaho. *Id*.

Hill County Sheriff's Deputy Tanner Donovan applied for a search warrant from Hill County Justice Court to search further Wayne's property for stolen tools. Doc. 16-4. Justice of the Peace Audrey Barger signed the search warrant on July 14, 2016. *Id*. at 3. Officers continued to search the shop and located several glass pipes, money, and a bag containing a crystalline substance. *Id*.

Tri-Agency Task Force ("TATF") Agent Shane Rice applied for another search warrant from Hill County Justice Court to search further Wayne's property for drugs. Doc. 16-5. Justice of the Peace Audrey Barger signed the search warrant

on July 14, 2016. *Id*. at 3. Officers subsequently located approximately 136 grams of methamphetamine, several firearms, and various drug paraphernalia, including baggies, scales, and pipes. Doc. 16-6 at 6. Officers completed the search and left. Neither Wayne nor Defendant Dolphay were present for the search, and neither were located or questioned that day.

**Miscellaneous.**

On February 1, 2014, TATF Agent CJ Reichelt ("Agent Reichelt") learned from a confidential informant that Robert Bonavita was distributing methamphetamine for Defendant Dolphay in Havre, Montana. Doc. 16-6 at 7. On January 12, 2015, another confidential informant confirmed that Defendant Dolphay was selling large amounts of methamphetamine in Havre, Montana. *Id*. On July 18, 2016, a third confidential informant told Agent Reichelt that he or she recently had purchased methamphetamine from Defendant Dolphay. *Id*. The third confidential informant also claimed that he or she would call or text Defendant Dolphay's cellphone to coordinate purchases. *Id*. Agent Reichelt applied for a search warrant from the Hill County District Court. Doc. 16-6. Agent Reichelt sought Defendant Dolphay's Version Wireless cellphone records. *Id*. District Judge Daniel Boucher signed the search warrant on July 20, 2016. Doc. 16-6 at 12.

On June 6, 2017, the Havre Police Department received a late-night report of a suspicious car parked at the corner of 7th Avenue and 6th Street. Doc. 16-10.

Officers arrived and watched the driver of a Dodge Challenger, later identified as Defendant Dolphay, enter a nearby apartment buildings. Doc. 19 at 8. The Challenger's license plates were registered to a green Chevrolet pickup. *Id*. The Challenger's VIN number matched a car reported stolen in California. *Id*. Officers arrested Defendant Dolphay for possession of a stolen vehicle, driving with a suspended license, and having fictitious plates. *Id*.

Officers read Defendant Dolphay his *Miranda* warnings. Doc. 19-2 at 1. After agreeing to speak with officers, Defendant Dolphay admitted that there was some methamphetamine and possibly a gun hidden inside the Challenger. *Id*. Defendant Dolphay later spoke with TATF agents. He discussed his drug distribution activity and acknowledged that the methamphetamine seized in Wayne's shop in July 2016 belonged to him. *Id*.

The government indicted Defendant Dolphay on September 3, 2020. Doc. 1. The indictment charged one count of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). *Id*.

**DEFENDANT DOLPHAY'S MOTION TO SUPPRESS**

Defendant Dolphay's Motion to Suppress (Doc. 15) challenges the validity of the Phillips County search warrant. He also questions the validity of the three

subsequent Hill County search warrants because they stem entirely from the initial Phillips County search warrant. Doc. 16. Defendant Dolphay attacks the Phillips County search warrant on two separate grounds. First, he claims that the Phillips County search warrant lacks sufficient particularity because it fails to identify on which parcels of property each of the outbuildings and shops to be searched exists. Doc. 16 at 3. Second, he claims that the Phillips County search warrant application lacks sufficient probable cause because the information provided by Glenn Dolphay lacks reliability and proves too stale to satisfy the Fourth Amendment's probable cause requirement. *Id*. at 16−17.

As a preliminary matter, the Government contends that Defendant Dolphay lacks standing to contest the validity of the Phillips County search warrant because Defendant Dolphay lacked a legitimate expectation of privacy in the shop. Doc. 19 at 10. The Government also contends that the Phillips County search warrant contained sufficiently particularity and search warrant application contains sufficient probable cause. *Id*. at 14−21.

**ANALYSIS**

    **STANDING**

A person may challenge the validity of a search warrant under the Fourth Amendment only if he or she possess a legitimate expectation of privacy in the

places searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). To demonstrate a "legitimate expectation of privacy," a person must show that he or she has an actual subjective expectation of privacy in the invaded space and that society is prepared to recognize that expectation. *United States v. Armenta*, 69 F.3d 304, 308 (9th Cir. 1995). Defendant Dolphay provided, via affidavit and oral testimony, the following information in support of his claim that he possessed a legitimate expectation of privacy in the shop:

- The shop belonged to his father, Wayne Dolphay.

- He performed labor and upkeep on the shop and around Wayne's property.

- He worked and stayed in the shop during seeding, harvest, and calving seasons.

- The shop and the living space inside were equipped with locks, to which only he and Wayne possessed keys.

- He routinely stored his tools and other personal items in the shop and living space.

- He lived in the shop for a month in February 2016 and 1−2 nights per week afterwards.

- He received mail at the Dolphay property and stored the mail in the shop.

- He kept clothes and other household items in the shop, often times temporarily but sometimes permanently.

- He did not expect others to enter the shop without either him or Wayne present.

Doc. 16-7; Doc. 25. Defendant Dolphay erroneously relies on the factors outlined in *Minnesota v. Olson*, 495 U.S. 91, 93 (1990), rather than the totality-of-the-circumstances standard outlined in *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). The United States Supreme Court rejected the *Olson* factors as needlessly complex. *Olsen*, 495 U.S. at 96.

The record indicates, nonetheless, that Defendant Dolphay possessed a legitimate expectation of privacy in shop. *See United States v. Davis*, 932 F.2d 752, 757 (1991). In *Davis*, officers searched the apartment in which the defendant was renting a room. The Ninth Circuit affirmed the District Court's finding that the defendant had a legitimate expectation of privacy. *Id*. The facts in *Davis* prove analogous to the facts in the present case. In both cases, the defendants had a key to the places searched and remained free to come and go as they wished. Both defendants stored personal belongings at the places to be searched, and they took the precaution to lock away personal items. Both defendants previously and currently had resided in the places searched for extended periods of time.

The *Davis* Court found significant the fact that the defendant had paid rent and exercised joint control of the property. *Id*. In the present case, Defendant Dolphay did not testify that he paid rent. He did testify, however, that he alone provided for the shop's upkeep, suggesting a personal investment in the shop much akin to a person paying. This arrangement, taken together with his joint control over

the shop, suggests Defendant Dolphay possessed a legitimate expectation of privacy. *See id*. Consequently, the Court finds that Defendant Dolphay maintains standing to challenge the search warrants authorizing officers to search the shop. *See Rakas*, 439 U.S. at 143.

## VALIDITY OF THE PHILLIPS COUNTY SEARCH WARRANT.

### Reliability of Glenn Dolphay's Tip.

Defendant Dolphay's seems to argue that Glenn Dolphay failed to provide sufficient information to satisfy the Fourth Amendment's probable cause requirement because Glenn's information lacks indicia of reliability and proved too stale. *Id*. at 16−17. The Court must evaluate the reliability of an informant's information based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 231 (1983). Relevant factors include whether the informant was anonymous, *see Florida v. J.L.*, 529 U.S. 266, 271 (2000), whether the informant maintains a history of providing reliable information, *see Adams v. Williams*, 407 U.S. 143, 146−147 (1972), or whether the informant discloses the basis of knowledge of the information, *see Spinelli v. United States*, 393 U.S. 410, 416 (1969). Taking these factors into consideration, the Court finds that the totality of the circumstances indicates Glenn's information constitutes reliable information. S*ee Gates*, 462 U.S. at 213.

First, Glenn did not provide the PCSO with information under the veil of anonymity. *See Florida v. J.L.*, 529 U.S. at 271. He went to the PSCO, identified himself as Glenn Dolphay, and spoke with Deputy Lytle in person. Deputy Lytle could evaluate Glenn Dolphay's reputation, judge his demeanor, and locate him later should the information turn out to be unreliable. *See Florida v. J.L.*, 529 U.S. 266, 270. In fact, the record shows that Deputy Lytle contacted Glenn at least once after the initial interview to request follow up information.

Second, the record contains no information to indicate that Glenn had a history of providing unreliable information to law enforcement. *See Adams*, 407 U.S. at 146−47. He provided information that Deputy Lytle immediately could corroborate. Furthermore, the circumstances of the case suggest that Glenn possessed no motivation to fabricate information.

Third, Glenn provided the basis of knowledge for his information. *See Spinelli*, 393 U.S. at 416. Glenn told the PCSO that Wayne was his brother and that Glenn personally had seen Morrison's ATV on Wayne's property and the date on which Glenn had seen it.

**Staleness of Glenn Dolphay's Tip.**

Defendant Dolphay argues briefly that the search warrant application relied on stale information because the PCSO first learned of Morrison's stolen ATV four years before the search. Doc. 16 at 17. The Court must evaluate staleness in light

of the particular facts of the case and the nature of the criminal activity and property sought. *United States v. Foster*, 711 F.2d 871, 878 (9th Cir. 1983). Defendant Dolphay's argument incorrectly frames the issue of staleness. The PCSO did not rely on the four-year-old police report. The PCSO instead relied on information provided by Glenn Dolphay in 2016. The original police report served to corroborate this information. Glenn told the PCSO on June 18, 2016, that he had seen Morrison's ATV on Wayne's property in March or April of 2016. If Wayne kept Morrison's ATV for four years, as Glenn's information suggests, then the Phillips County District Court reasonably could believe both that Wayne would likely not have recently relocated or destroyed Morrison's ATV and that a search likely would yield fruitful results.

Other factors also weigh against a staleness finding. The 2012 police report remained open. This fact indicated that Morrison's ATV had not been found. The State of Montana stock inspector recently had seized a stolen cattle chute on Wayne's property. This recent seizure indicates that Wayne Dolphay kept stolen goods on his property. Glenn's information further suggests that Wayne had repurposed parts from the stolen cattle chute. This information indicates that Wayne may have kept parts of Morrison's stolen ATV for long-term purposes. The Phillips County district judge, given the circumstances of this case, reasonably could have concluded that evidence of Morrison's stolen ATV reasonably could be found on

Wayne's property when the PCSO executed the search warrant in July of 2016. *See United States v. Greany*, 929 F.2d 523, 525 (9th Circuit 1991).

**Particularity.**

Defendant Dolphay claims that the Phillips County search warrant lacks sufficient particularity because it does not articulate precisely which buildings to be searched and the location of these buildings on each of the four parcels of property. The Fourth Amendment requires that a search warrant particularly describe both the places to be searched and the persons or things to be seized. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). A search warrant must be sufficiently specific to enable the person conducting the search reasonably to identify the places authorized to be searched and the persons and things authorized to be seized. *Id*. The required level of specificity depends on the circumstances of a case. *Id*.

Most case law relating to the Fourth Amendment's particularity requirement specifically addresses the particularity of the persons or things to be seized rather than the particularity of the places to be searched. The standard remains the same for both. *See Spilotro*, 800 F.2d at 963. As a result, the Court will assume that the case law addressing the particularity of the persons or things to be seized remains applicable or at least quite instructive. *Id*.

The Ninth Circuit concentrates on the following factors in evaluating particularity: (1) whether probable cause exists to seize all items of a particular type

13

of items described in the search warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate the items subject to seizure from those which are not; and, (3) whether the government was able to describe the items subject to seizure more particularly considering the information available to it at the time the search warrant was issued. *Spilotro*, 800 F.2d at 964. Given the analysis of these factors below, the Phillips County Search Warrant (Doc. 16-1) proves sufficiently particular.

Regarding the first factor, probable cause exists to search all the parcels described in the search warrant. The warrant identifies the places to be search as all of the outbuildings, shops, and outdoor areas of Wayne Dolphay's property in Hill County, MT. Doc 16-1. The search warrant described Wayne's property by providing the legal descriptions of the four adjoining parcels of land. Glenn Dolphay told the PCSO that he personally had seen Morrison's ATV on Wayne's property. He also said that he had seen Wayne work on Morrison's ATV in the only shop on the property. This information constitutes probable cause to believe officers would find Morrison's ATV on Wayne's property, either in the outdoor areas or within one of the outbuildings or shops. It proves reasonable, therefore, that the search warrant authorized officers to search all of the outbuildings, shops, and outdoor areas of the four adjoining parcels.

Regarding the second factor, the search warrant articulates objective standards to differentiate the places that were to be searched from the places that were not. The search warrant primarily authorizes officers to search those places that officers reasonably might find Morrison's ATV. In this case: all the outbuildings, shops, and outdoor areas of Wayne's property. The search warrant would not authorize officers to search places that could not contain Morrison's ATV. *See United States v. Ross*, 456 U.S. 798, 821 (1982). This practical limitation excludes searching any place too small to find an ATV, such as a small cupboard inside a building or inside a vehicle's glove compartment. This limitation excludes searching any place where a person could but would not reasonably keep an ATV, like a person's bedroom. Consistent with this principle, Deputy Lytle testified that officers had no intention of searching Wayne's house because they did not anticipate finding Morrison's ATV in it.

Regarding the third factor, officers reasonably could not describe the places to be searched with any more particularity. The movable nature of an ATV makes it impractical for the search warrant to specify the location where officers would find an ATV with any more particularity. The search warrant reasonably narrows the scope to those places where one reasonably might keep an ATV: all the outbuildings, shops, and outdoor areas of Wayne's property. *See Ross*, 456 U.S. at 821. As depicted in the google maps image contained in the search warrant application, the outbuildings and shops are clustered in the center of the property with cultivated

cropland and pastureland surrounding the occupied areas. Officers never searched the only house located on the other side of the property.

Defendant Dolphay makes much of the fact that the search warrant does not specify which of the outbuildings and shops are located on which of four adjoining parcels. Doc. 16 at 14. The Court finds this issue largely irrelevant. All of the buildings were located on a contiguous parcel of property owned by Wayne Dolphay. To state this fact in the search warrant would have added nothing of substance to the warrant.

Second, the search warrant authorizes officers to search all of the outbuildings, shops, and outdoor areas of these four adjoining parcels. It makes no difference that the search warrant does not identify which outbuilding and shop are on which parcel because the search warrant authorizes officers to search every outbuilding and shop. Defendant Dolphay's argument might be relevant in a scenario where there exist multiple buildings on multiple parcels, but a search warrant authorizes officers to search only one particular building. In that case, the search warrant would need to be specific enough to enable officers reasonably to determine which buildings were subject to search and which were not. *Spilotro*, 800 F.2d at 963. In the present case, the level of specificity that Defendant Dolphay would require would not have aided the officers in distinguishing those buildings that were to be searched from those that were not. *Id*.

**THE VALIDITY OF THE REMAINING WARRANTS.**

Defendant Dolphay argues that the three subsequent Hill County search warrants stem from the execution of the Phillips County search warrant. Doc. 16 at 18−20. Given the Court's determination above that the Phillips County search warrant proves valid, Defendant Dolphay's argument against the subsequent Hill County search warrants cannot prevail.

**IT IS HEREBY ORDERED**:

1. Defendant Dolphay's Motion to Suppress (Doc. 15) is **DENIED**.

Dated the 6th day of April, 2021.

Brian Morris, Chief District Judge
United States District Court